IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CATHERINE T., <br><br> Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI,[1] Acting Commissioner of the Social Security Administration; <br><br> Defendant. | 8:20-CV-404 <br><br> **MEMORANDUM AND ORDER** |

Plaintiff, Catherine T., filed her Complaint, Filing 1, seeking judicial review of Defendant's, the Commissioner of the Social Security Administration's, denial of her application for disability insurance benefits. Catherine T. moves this Court for an order reversing the Commissioner's final decision, or in the alternative, remanding the claim for further proceedings. Filing 20. The Commissioner filed a motion to affirm the agency's final decision denying benefits. Filing 25. For the reasons stated below, the Court denies Catherine T.'s motion and grants the Commissioner's motion.

## I.  BACKGROUND

Catherine T. was fifty-one years old when she filed for disability insurance benefits, Filing 16-2 at 21; Filing 16-3 at 23, and fifty-three years old at the time of the hearing and corresponding decision at issue, Filing 16-2 at 8. She has a GED and trained as a hairstylist, Filing 16-2 at 22, 49, which was her primary form of work from 1990 until 2016, Filing 16-6 at 2, 27.

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substituted Kilolo Kijakazi, Acting Commissioner of the Social Security Administration as Defendant in this case in the place of Andrew Saul, Commissioner of the Social Security Administration. Filing 24.

1

### A. Procedural History

On November 6, 2017, Catherine T. protectively filed an application for disability insurance benefits, Filing 16-3 at 36, under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and alleged an onset date of October 19, 2017, Filing 21 at 6; Filing 16-3 at 23. The Commissioner denied the claim initially, Filing 16-3 at 36, and affirmed the denial on reconsideration, Filing 16-3 at 58–59. On October 10, 2019, a hearing was held before the administrative law judge ("ALJ"). Filing 16-2 at 46.

On December 26, 2019, the ALJ issued her decision denying Catherine T.'s claim, finding Catherine T. was not disabled as defined by 42 U.S.C. §§ 416(i) and 223(d) of the Social Security Act between October 19, 2017, and the date of the ALJ's decision. Filing 16-2 at 24. The Appeals Council found no reason to review the ALJ's decision and sent notice of its denial of Catherine T.'s request for review on August 7, 2020. Filing 16-2 at 24. Catherine T. timely filed the present action. Filing 1; *see* 42 U.S.C. § 405(g).

### B. Administrative Hearing

The ALJ heard the matter on October 10, 2019. Filing 16-2 at 46. Catherine T. testified that she worked as a hairstylist, Filing 16-2 at 52, and that her last full-time position was as a hairstylist/manager, which included supervising others, hiring and firing, and scheduling. Filing 16-2 at 50–51. She has not worked in the past three years and has not worked full-time since September 2014. Filing 16-2 at 49.

In 2017, Catherine T. underwent surgery on her right shoulder to repair a dislocated bicep. Filing 16-2 at 53. As a result, she has difficulty reaching both forward and overhead. Filing 16-2 at 54. Catherine T. also testified she has undergone various surgeries—for tennis elbow, ulnar nerve, and a de Quervain's release. Filing 16-2 at 54–55. She continues to have pain in both of her

wrists and both of her thumbs, Filing 16-2 at 55, and struggles gripping and grasping with her left hand due to numbness, Filing 16-2 at 60. Additionally, Catherine T. has issues with her SI joint, receives cortisone injections for arthritis in her knees, and recently underwent surgery on her left ankle tendons. Filing 16-2 at 59–60.

Catherine T. was diagnosed with fibromyalgia in 1989 and is treated with trigger point injections every four weeks and daily pain medication. Filing 16-2 at 56–57. The fibromyalgia causes her fatigue and memory issues. Filing 16-2 at 57. Additionally, Catherine T. sees a psychologist every four weeks and takes medication for depression and anxiety. Filing 16-2 at 57. She often has panic attacks and has difficulty with concentration and attention. Filing 16-2 at 58. Catherine T. has also taken medication for vertigo, or dizziness, since her early teens. Filing 16-2 at 64.

In discussing her daily life, Catherine T. testified, "Anything I do there's a limitation where I have issues." Filing 16-2 at 61. Therefore, Catherine T.'s husband, sister-in-law, and mother-in-law aid in various household activities such as cleaning, grocery shopping, and caring for her cats. Filing 16-2 at 62. Despite the limitations, Catherine T. vacuums and does the laundry "some of the time." Filing 16-2 at 61–62. Catherine T. also testified that she drives and is able to grocery shop despite her previous statement that her family members aid in grocery shopping. Filing 16-2 at 64. Catherine T. would travel to North Dakota to see her mother "every other month and cleaned for her." Filing 16-2 at 66. While Catherine T. does not walk well unassisted, she is mobile utilizing a cane or walker. Filing 16-2 at 64–65. Finally, Catherine T. testified to being self-conscious and having problems being around other people but stated that she has no problems getting along with others. Filing 16-2 at 65–67.

Stephen Schill, the vocational expert, testified as to the availability of jobs suitable for Catherine T. Filing 16-2 at 68–74. He classified Catherine T.'s past work as skilled light positions, Filing 16-2 at 68–69, and was of the opinion that currently, Catherine T. would only be able to engage in unskilled light work, such as a tanning salon operator, a baking worker on a conveyor line, or an usher. Filing 16-2 at 71. Schill noted that the Dictionary of Occupational Titles addresses neither Catherine T.'s difficulties reaching forward nor her reluctance to interact with others. Filing 16-2 at 74.

### C. Additional Medical and Other Evidence

Catherine T.'s initial disability report alleges the following conditions limit her ability to work: De Quervain's tenosynovitis, fibromyalgia, asthma, migraines, tendinitis in right arm, depression and anxiety, ulnar nerve damage in both arms, sleep apnea, COPD and emphysema, and osteoarthritis. Filing 16-6 at 14. On February 28, 2018, Catherine T. reported her breathing issues had gotten worse. Filing 16-6 at 48. On September 18, 2018, Catherine T. reported that her back pain had worsened. Filing 16-6 at 63.

Catherine T. is treated by Christopher Criscuolo, M.D., for fibromyalgia and muscle pain. *See* Filing 17-1 at 63. Catherine T.'s records show she reports an average pain rating of 6 to 8 out of 10 and has tender points in her spine, hips and thighs on examination. *See, e.g.*, Filing 17-1 at 83, 88; Filing 17-4 at 93, 103; Filing 17-5 at 2, 6–8. These records also show Catherine T. routinely had a normal gait and 5/5 strength in her upper and lower extremities. *See, e.g.*, Filing 16-8 at 94 ("normal gait" and "5/5"); Filing 17-1 at 87 (same); Filing 17-4 at 22 (same); Filing 17-5 at 6 (same).

For treatment, Dr. Criscuolo prescribes hydrocodone twice a day and performs repeat trigger point injections. *See, e.g.*, Filing 17-1 at 87, 92; Filing 17-4 at 23, 56, 98; Filing 17-5 at 7,

4

12–13. The record shows these treatments are generally effective. *See, e.g.*, Filing 17-1 at 83 ("Patient states that the pain symptoms are stable . . . and feels that the pain is manageable."); Filing 17-4 at 93 (same); Filing 17-5 at 7–8 (same).

In March 2018, Catherine T. saw Dr. Keiser concerning bilateral knee pain she had been experiencing since 2013. Filing 17-3 at 96. MRIs revealed a medial meniscal tear of the right knee, degenerative medial meniscus in the left knee, and chondromalacia in both knees. Filing 17-3 at 127. On May 11, 2018, Catherine T. received a right knee arthroscopy and left knee corticosteroid injection. Filing 17-2 at 41. In April 2019, Catherine T. received a left knee arthroscopy. Filing 17-2 at 22. The record reflects that Catherine T.'s recovery was progressing well following the arthroscopies. *See* Filing 17-3 at 25 (stating that eight days after her surgery Catherine T. "feels she is doing well"); Filing 17-3 at 53–54 (noting "[t]here is no instability . . . to either knee"); Filing 17-5 at 2 ("Patient . . . states the medication is effective giving average pain rating of 6/10 and feels that the pain is manageable.").

### D. Medical Opinions

The record contains an opinion from Catherine T.'s treating physician, Dr. J. Russell Bowen, dated September 9, 2019. *See* Filing 17-4 at 174–75. At that time, Dr. Bowen had been Catherine T.'s treating physician for three years—he began treating Catherine T. in August of 2016. Filing 17-4 at 174. Dr. Bowen's overall conclusion was that Catherine T.'s prognosis was best described as fair. Filing 17-4 at 174. He stated the osteoarthritis in her hand and fibromyalgia limit the use of her hands for handling and grasping. Filing 17-4 at 174. Dr. Bowen concluded that "[g]iven the overall picture of her conditions," Catherine T. would be limited to standing and walking no more than two hours in an eight-hour day. Filing 17-4 at 174.

Catherine T.'s initial disability determination, dated February 8, 2018, contains an opinion by the state agency medical consultant, Dr. Jerry Reed. *See* Filing 16-3 at 31–33. Dr. Reed concluded that Catherine T. would be limited to stand and/or walk with normal breaks for a total of six hours in an eight-hour workday. Filing 16-3 at 31–32. He noted that Catherine T. would be limited in reaching overhead but found no other manipulative movements significantly limited. Filing 16-3 at 32. On reconsideration, state agency medical consultant Dr. Arthur Weaver also concluded that Catherine T. could stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday. Filing 16-3 at 51. Dr. Weaver noted the record was overall consistent with the initial disability determination and lent supportability to his findings. Filing 16-3 at 52.

### E. ALJ's Findings

An ALJ is required to follow a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a); *see also Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004))). The ALJ must continue the analysis until the claimant is found to be "not disabled" at steps one, two, four, or five, or is found to be "disabled" at step three or five. *See* 20 C.F.R. § 404.1520(a).

Step one requires the ALJ to determine whether the claimant is currently engaged in substantial gainful activity. *See* 20 C.F.R. § 404.1520(a)(4)(i), (b). In this case, the ALJ found that

Catherine T. has not engaged in substantial gainful activity since October 19, 2017. Filing 16-2 at 13.

Step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. § 404.1520(c). A "severe impairment" is an impairment or combination of impairments that significantly limits the claimant's ability to perform "basic work activities," 20 C.F.R. § 404.1520(a)(4)(ii), (c), and satisfies the "duration requirement," 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."). Basic work activities include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b). If the claimant cannot prove such an impairment, the ALJ will find that the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(ii), (c).

With respect to step two, the ALJ found that Catherine T. is significantly limited in her ability to perform work activities by, and accordingly has, the following severe impairments: fibromyalgia, asthma, chronic obstructive pulmonary disease (COPD), a spine disorder, osteoarthritis of the left thumb, bilateral carpal tunnel syndrome, elbow tendinosis and ulnar nerve status-post surgical repair, right shoulder tear and dislocation, bilateral knee degenerative joint disease, bilateral ankle synovitis, depression, anxiety, and attention-deficit hyperactivity disorder (ADHD). Filing 16-2 at 14.

Step three requires the ALJ to compare the claimant's impairment or impairments to a list of impairments. *See* 20 C.F.R. § 404.1520(a)(4)(iii), (d); *see also* 20 C.F.R. § 404, Subpart P,

7

App'x 1 (20 C.F.R. §§ 416.920(d), 416.925–26). If the claimant has an impairment "that meets or equals one of [the] listings," the analysis ends and the claimant is found to be "disabled." 20 C.F.R. § 404.1520(a)(4)(iii), (d). If a claimant does not suffer from either a listed impairment or its equivalent, the analysis proceeds to steps four and five. *See* 20 C.F.R. § 404.1520(a). The ALJ found that Catherine T. did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments. Filing 16-2 at 14.

Step four requires the ALJ to consider the claimant's residual functional capacity ("RFC") to determine whether the impairment or impairments prevent the claimant from engaging in "past relevant work." *See* 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). "Past relevant work" refers to work performed by the claimant within the last fifteen years or fifteen years prior to the date that disability must be established. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). If the claimant is able to perform any past relevant work, the ALJ will find the claimant is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f). Catherine T.'s past relevant work is classified as light work by the Dictionary of Occupational Titles. Filing 16-2 at 22.

The ALJ found that Catherine T. "has been limited to a light residual functional capacity with additional limitations." Filing 16-2 at 22.

> [S]he can never climb ladders, ropes, or scaffold; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can occasionally handle, finger, and feel with the bilateral upper extremities; and can occasionally reach overhead with the right upper extremity. She can tolerate occasional exposure to extreme cold, extreme heat, vibration, atmospheric conditions, and hazards such as high exposed places and moving mechanical parts. She can perform simple and routine work tasks, sustain concentration and persist at work tasks for two hours at a time with normal breaks in an 8 hour work day, perform work with few changes in routine, and can frequently interact with coworkers, supervisors, and the public.

Filing 16-2 at 16. The ALJ found that Catherine T.'s additional limitations make her unable to perform any past relevant work. Filing 16-2 at 22.

8

At step five, the ALJ must determine whether the claimant is able to do any other work considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If the claimant is able to do other work, the claimant is not disabled. Based on the vocational expert's testimony, the ALJ found that there are jobs that exist in significant numbers in the national economy that Catherine T. can perform. Filing 16-2 at 23. Accordingly, the ALJ found Catherine T. "not disabled" as defined by 42 U.S.C. §§ 416(i) and 223(d) of the Social Security Act. Filing 16-2 at 24.

## II. DISCUSSION

### A. Standard of Review

The Court must "determine whether the ALJ's decision complies with the relevant legal standards." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (internal quotation omitted). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)). No deference is owed to the Commissioner's legal conclusions. *Brueggemann v. Barnhart*, 348 F.3d 689, 692 (8th Cir. 2003) (stating allegations of legal error are reviewed de novo).

The Court also reviews the denial of social security benefits to determine whether "the ALJ's decision is supported by substantial evidence on the record as a whole." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014)); *see* 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Phillips v. Astrue*, 671 F.3d 699, 701 (8th Cir. 2012)). "An ALJ's decision is 'not outside the zone of choice' simply because this Court 'might have reached a different conclusion had we been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

The Court "must consider evidence that both supports and detracts from the ALJ's decision, but [the Court] will not reverse an administrative decision simply because some evidence may support the opposite conclusion." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Perkins*, 648 F.3d at 897). The Court will not disturb the ALJ's decision simply because it might have reached a different conclusion. *Kraus*, 988 F.3d at 1024. The Eighth Circuit has held that a court should "defer heavily to the findings and conclusions of the Social Security Administration." *Wright*, 789 F.3d at 852 (quoting *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)).

**B. Analysis**

Catherine T. asserts the ALJ erred in two regards: (1) by not articulating "a sufficient explanation" for finding her treating physician's, Dr. Bowen's, opinion unpersuasive; and (2) by not providing "sufficient reasons" for finding Catherine T. was not credibly reporting her limitations. Filing 21 at 2. These assertions are without merit.

*1. Not Articulating a Sufficient Explanation for Rejecting Dr. Bowen's Opinion*

Catherine T. takes issue with the manner in which the ALJ articulated her decision to reject Dr. Bowen's opinion that Catherine T. could not stand and walk more than two hours in an eight-hour workday. Filing 21 at 24–25. Relying on *Lucus*, 960 F.3d 1066, Catherine T. claims the ALJ failed to provide sufficient reasons for finding Dr. Bowen's treating opinion not persuasive, amounting to a legal error requiring remand. Filing 21 at 22, 26.

*Lucus* provides:

10

> If the ALJ decides that the opinion does not deserve controlling weight, the ALJ must provide "good reasons" for this decision and must consider: the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, record support for the opinion, the opinion's consistency, the extent to which the opinion is connected with the physician's specialization, and other relevant factors. 20 C.F.R. § 404.1527(c)(2)–(6). SSA guidance provided that the decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers ... the reasons [for the decision]." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

960 F.3d at 1068. However, the regulations at issue in *Lucus* are no longer in effect, and Catherine T. admits as much.[2] Filing 21 at 22. Instead, she claims that the "general good sense reflected in *Lucus v. Saul* still survives—an ALJ must still explain why a medical opinion is discounted or disregarded" despite the rescinded regulations. Filing 21 at 22 (citing *Phillips v. Saul*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *2 (E.D. Ark. Jun. 24, 2020)).

The new regulation which governs how an ALJ evaluates a doctor's opinion no longer requires ALJs to "defer or give any specific evidentiary weight, including controlling weight" to any specific medical opinion, including that of a claimant's treating physician. 20 C.F.R. § 404.1520c(a). Instead, the current regulation requires that ALJs "articulate how [they] considered the medical opinions and prior administrative medical findings." *Compare* 20 C.F.R. § 404.1527(c)(2) and SSR 96-2p, *with* 20 C.F.R. § 404.1520c(a), (b)(2). Under the current regulation, there are five factors that an ALJ considers in evaluating a medical opinion: supportability of the opinion, consistency of the opinion with the other evidence in the case, the doctor's relationship with the claimant, the doctor's specialization, and miscellaneous other factors

---

[2] 20 C.F.R. § 404.1527 only controls claims that were filed before March 27, 2017. Because Catherine T. filed her action in November of 2017, 20 C.F.R. § 404.1520c controls this action. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5845 (Jan. 18, 2017) (rescinding SSR 96-2p); *id.* at 5869 (limiting § 404.1527 to claims filed before Mar. 27, 2017).

11

including the doctor's familiarity with the other evidence in the claim. 20 C.F.R. § 404.1520c(c)(1)–(5).

Of these five factors, the most important in evaluating the persuasiveness of a medical opinion are its supportability and its consistency. 20 C.F.R. § 404.1520c(a). The regulation specifies that the supportability factor of medical opinions or administrative medical findings is to be considered in light of the relevancy of objective medical evidence and supporting explanations—the more relevant, the more persuasive. 20 C.F.R. § 404.1520c(c)(1). Similarly, the more consistent a medical opinion or prior administrative medical finding is with the evidence in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). While ALJs must consider the remaining three factors, they need not specifically articulate how they evaluated them. 20 C.F.R. § 404.1520c(b)(2).

In both *Lucus* and *Phillips*, on which Catherine T. relies, the court reversed and remanded when it found the ALJ's explanation contained "boilerplate or blanket statements" that resulted in a lack of clarity as to how the ALJ came to that conclusion. *See Lucus*, 960 F.3d at 1069 (finding the ALJ "either ignored or failed to discuss facts highly relevant to the factors"); *Phillips*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *3 ("It is unclear from the ALJ's opinion how [the treating physician's] opinion was unsupported by objective medical evidence or explanations."). Not only do these cases rely on regulations that are inapplicable to this case, the Court also determines the ALJ adequately explained and supported her determination that Dr. Bowen's opinion was not supported by the objective medical evidence and inconsistent with the treatment record.

    a. Dr. Bowen's Opinion

Dr. Bowen's letter is substantively one page long, consisting of four paragraphs. *See* Filing 17-4 at 174. His general opinion is that Catherine T.'s "prognosis is best described as fair." Filing

12

17-4 at 174. "Given the overall picture of her conditions and the severity of those conditions it is consistent that she is limited to standing and walking no more than 2 hours in an 8 hour day." Filing 17-4 at 174. Dr. Bowen states that his opinion is derived from seeing Catherine T. over three years and "review of her records from other specialists" where "most of the objective findings" were done. Filing 17-4 at 174. He articulated that Catherine T.'s "limitations in function and reports of pain have been consistent between his visits and observations and those of the consultants." Filing 17-4 at 174.

      b. The ALJ's Explanation

The ALJ concluded that Dr. Bowen's opinion was unpersuasive because while he did cite to Catherine T.'s treatment records, "he did not explain what objective findings supported a limitation regarding standing and walking." Filing 16-2 at 21; *see* Filing 17-4 at 174. Rather, the ALJ explained, Catherine T.'s treatment records showed "she was generally . . . found to have a normal gait and station, and generally intact range of motion and strength." Filing 16-2 at 21.

In particular, the ALJ rejected Dr. Bowen's determination that Catherine T. could only stand and walk two of eight hours in a day. Filing 16-2 at 21. The ALJ's conclusion in this regard was consistent with both state agency medical consultants who found Catherine T. was limited to standing and walking about six hours in an eight-hour workday. Filing 16-3 at 31–32, 51. The ALJ, therefore, found Catherine T. could perform light work. *See* 20 C.F.R. § 404.1567(b); Filing 16-2 at 20. The ALJ found the state agency medical consultants' opinions to be generally persuasive because they were "supported by their explanation of the evidence that they considered," and because their "opinions are also consistent with other evidence found in the record." Filing 16-2 at 20.

13

The record showed that Catherine T.'s doctors generally found her to have a normal gait and station, and intact range of motion and strength that are inconsistent with Dr. Bowen's opinion. Filing 16-2 at 21. Following her knee arthroscopies, Catherine T. reported that she was doing better and that her pain was manageable with medications. Filing 16-2 at 21 (citing Filing 17-3 at 25 ("she is doing well"); Filing 17-3 at 53–54 ("no instability"); Filing 17-5 at 2 ("Patient . . . states the medication is effective giving average pain rating of 6/10 and feels that the pain is manageable.").

The ALJ also relied on Catherine T.'s orthopedic records from Nebraska Spine in December of 2017, which note that Catherine T. was observed to limp but used no assistive device. Filing 16-2 at 18 (citing Filing 16-8 at 159–64 ("She notes mild improvement with walking . . . ."). Catherine T. had intact sensation, 5/5 lower extremity strength throughout, normal balance, and normal heel/toe walking. Filing 16-2 at 18. An MRI from April 2018 of Catherine T.'s knees showed mild chondromalacia of the patella, small joint effusion, and a focal tear in the posterior horn medial meniscus in the right knee, while Catherine T.'s left knee also showed mild chondromalacia of the patella and small joint effusion, and evidence of a degenerative signal in the medial meniscus but no tear. Filing 16-2 at 18 (citing Filing 17-3 at 3–4).

The ALJ noted that in March 2019, after Catherine T.'s right knee arthroscopy in May 2018, she reported doing well and said her right knee had responded favorably to the arthroscopy. Filing 16-2 at 18–19; *see* Filing 17-3 at 54. Despite an incident with a large dog slamming into Catherine T.'s knee, a subsequent physical exam showed only evidence of tenderness. Filing 16-2 at 19; *see* Filing 17-3 at 53. The ALJ further noted that in May 2019, following Catherine T.'s left knee arthroscopy in April 2019, she said she was doing better, "feels she is doing well," and denied having any significant pain issues. Filing 16-2 at 19; *see* Filing 17-3 at 25.

14

In finding Dr. Bowen's determination unpersuasive, the ALJ noted that the consultative examiner examined Catherine T. in July 2018—after Catherine T.'s right knee arthroscopy, but prior to her left knee arthroscopy. Filing 16-2 at 19. At that time, "she reported being able to care for her 12 cats and 2 dogs, and stated she 'spends most of her time cleaning.'" Filing 16-2 at 19; *see* Filing 17-1 146–47.

### c. The ALJ Properly Explained Why Dr. Bowen's Conclusory Opinion Does Not Support a Finding of Disability

Catherine T. asserts the ALJ's explanation constitutes the ALJ "playing doctor" by rejecting Dr. Bowen's opinion, substituting her own judgment, and failing to adequately explain her reasons for doing so. Filing 21 at 24. In light of the factors enumerated in 20 C.F.R. § 404.1520c(c) that the ALJ is to consider, this assertion has no merit. *See Combs v. Berryhill*, 878 F.3d 642, 646–47 (8th Cir. 2017) ("ALJ[s] must not substitute [their] opinions for those of the physician."). *But see Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008) ("[T]he ALJ may reject the opinion of any medical expert where it is inconsistent with the medical record as a whole.").

> An ALJ may give "limited weight" if they "provide[] conclusory statements only, or [are] inconsistent with the record." An ALJ may "discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions."

*Kraus*, 988 F.3d at 1024 (citations omitted); *see Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (conclusory opinions do not compel a finding of disability); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The ALJ found Dr. Bowen's opinion of a two-hour limitation on standing or walking in an eight-hour workday inconsistent with Catherine T.'s orthopedic records and unsupported by the other evidence in the record. Filing 16-2 at 18–19 (ALJ's opinion); *see, e.g.*, Filing 16-8 at 94 ("normal gait" and "5/5"); Filing 17-1 at 87 (same); Filing 17-4 at 22 (same); Filing 17-5 at 6

15

(same). As recorded in the medical files, Catherine T.'s statements indicate treatable conditions, such as the marked improvement after her arthroscopies. Filing 16-2 at 19. As the ALJ articulated, the record also fails to support Dr. Bowen's conclusion related to Catherine T.'s pain problems. Filing 16-2 at 19; *see, e.g.*, Filing 17-1 at 83 ("Patient states that the pain symptoms are stable . . . and feels that the pain is manageable."); Filing 17-4 at 93 (same); Filing 17-5 at 7–8 (same). The ALJ found Dr. Bowen's opinion to be conclusory and without a supporting explanation. Filing 16-2 at 21.

The ALJ articulated how she considered the medical opinions and prior administrative medical findings in the record, and she adequately explained how she weighed the supportability and consistency factors. *See* 20 C.F.R. § 404.1520c(a)–(c). Unlike the cases requiring reversal upon which Catherine T. relies, the ALJ's explanation did not contain boilerplate or blanket statements, and it is clear how the ALJ came to her conclusion. *See Lucus*, 960 F.3d at 1069; *Phillips*, No. 1:19-CV-34-BD, 2020 WL 3451519, at *3. The question is not if the Court might have reached a different conclusion, but whether the ALJ's decision is outside the zone of choice. *See Kraus*, 988 F.3d at 1024; *Bradley*, 528 F.3d at 1115. Here, it plainly was not.

As to the remaining factors the ALJ was to consider, Dr. Bowen is not a specialist in Catherine T.'s ailments related to her ability to stand or walk and formulated his opinion mostly by reviewing the evidence provided by specialists. *See* 20 C.F.R. § 404.1520c(c)(3)–(4). Ultimately, the ALJ found the state agency medical consultants' conclusions that Catherine T. would be able to sit and/or stand for six hours in an eight-hour workday more persuasive because they were consistent with and supported by the evidence. Filing 16-2 at 20–22; *see* Filing 16-3 at 31–32; Filing 16-3 at 51; *also see* 20 C.F.R. § 404.1520c(c)(5).

Under the currently applicable regulations, the ALJ's determination was adequately explained and supported by the record. Dr. Bowen's opinion was conclusory, and there is substantial evidence in the record that supports the decision to find his opinion unpersuasive. The ALJ did not err in declining to accept Dr. Bowen's opinion.

2. *Not Articulating Sufficient Reasons to Find Catherine T. Uncredible*

Catherine T. next argues the ALJ did not provide good reasons for finding that she was not credibly reporting her standing and walking limitations and pain level when the record is viewed as a whole. Filing 21 at 26–29. The ALJ found that Catherine T.'s "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Filing 16-2 at 20.

The Court defers to an ALJ's evaluation of the claimant's credibility "provided that [their] determination is supported by good reasons and substantial evidence." *Papesh*, 786 F.3d at 1134. An ALJ properly discredits a claimant's testimony when there are inconsistencies with the medical record, evidence of improvement in their conditions, and descriptions of their daily activities. *Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014); *see* 20 C.F.R. § 404.1529.

> When evaluating a claimant's subjective complaints of pain, the ALJ must consider objective medical evidence, the claimant's work history, and other evidence relating to (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. . . . [W]e will defer to credibility determinations that are supported by good reasons and substantial evidence. . . . An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony.

*Swink v. Saul*, 931 F.3d 765, 770-71 (8th Cir. 2019) (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)). An ALJ "need not explicitly discuss each factor." *Id.* (citing *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011).

The claimant bears the burden of establishing their RFC. *Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019). "The mere fact that some evidence may support a conclusion opposite to that reached by the Commissioner, however, does not allow this Court to reverse the decision of the ALJ." *Swink*, 931 F.3d at 770 (citation and internal quotations omitted). Catherine T. asserts that she did not have to prove that she was bedridden to be disabled, only that she needed to perform full-time light exertional work. Filing 21 at 27. The Court agrees with Catherine T.'s burden of proof but finds that the ALJ had good reasons and sufficient evidence to determine that Catherine T. did not meet her burden.

The ALJ relied on a number of the factors stated above in reaching her conclusion that Catherine T. was not credible. The ALJ considered the objective medical evidence in the record and concluded it was inconsistent with Catherine T.'s claims of disability, especially as it related to Catherine T.'s daily activities and the duration, frequency, and intensity of her pain. While Catherine T. claimed she had an inability to perform full-time light exertional work, Filing 21 at 27, did chores once a week for two days off and on as she was limited by breathing and fatigue, and pain, Filing 21 at 27, and "pain never averaged better than 6 out of 10," Filing 21 at 29, the objective medical evidence revealed her pain was not disabling.

Examinations of Catherine T., including those by Dr. Bowen, routinely revealed that she had a normal gait and 5/5 strength and upper and lower extremities. Filing 16-8 at 94 ("normal gait" and "5/5"); Filing 17-1 at 87 (same); Filing 17-4 at 22 (same); Filing 17-5 at 6 (same). Furthermore, her husband's third-party report from January 2018 reflects that Catherine T. cares for her pets and does her own chores, such as shopping and laundry. Filing 16-6 at 36–37. Catherine T.'s report to the consultative examiner in July 2018 corroborates that she was able to

care for her pets and that she spends most of her time cleaning. Filing 16-2 at 19; *see* Filing 17-1 at 146–47.

The ALJ also cited an office visit Catherine T. had with Lynn A. Jeffrey, D.O. on June 20, 2019, during which Catherine T. referenced numerous trips "going back and forth between Omaha and North Dakota." Filing 17-4 at 164. Doctor Jeffrey's progress notes from that office visit reflect that Catherine T. "denie[d] shortness of breath or trouble breathing." Filing 17-4 at 164. Dr. Jeffrey noted that Catherine T. was "[n]egative for shortness of breath and wheezing," Filing 17-4 at 168, and that her "breath sounds normal" with normal effort, Filing 17-4 at 169. The ALJ also noted that Catherine T. reported preparing some meals and driving on occasion. Filing 16-2 at 18 (citing Filing 16-6 at 40–41).

The ALJ also considered that the medical records revealed Catherine T. experienced improvement in her symptoms with treatment and medication. For example, following her knee arthroscopies, Catherine T. reported that she was doing better and that her pain was manageable with medications. Filing 16-2 at 21 (citing Filing 17-3 at 25 ("she is doing well"); Filing 17-3 at 53–54 ("no instability"); and Filing 17-5 at 2 ("Patient . . . states the medication is effective . . . and feels that the pain is manageable.")). As the ALJ articulated, the record does not support a finding that Catherine T. is disabled due to her pain problems. Filing 16-2 at 19; *see, e.g.*, Filing 17-1 at 83 ("Patient states that the pain symptoms are stable . . . and feels that the pain is manageable."); Filing 17-4 at 93 (same); Filing 17-5 at 7–8 (same). Impairments that are controllable by treatment or medication are not considered to be disabling. *Papesh*, 786 F.3d at 1134.

The ALJ properly discredited Catherine T.'s testimony based on inconsistencies with the medical record, evidence of improvement in her conditions, and descriptions of her daily activities.

The ALJ found that Catherine T.'s statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record. *See Turpin*, 750 F.3d at 994. The Court defers to the ALJ's evaluation of the claimant's credibility because good reasons and substantial evidence support it.

### III. CONCLUSION

The Court finds the Commissioner's final decision denying Catherine T.'s claim for benefits under the Act should be affirmed.

IT IS ORDERED:

1. The Commissioner's Motion to Affirm Commissioner's Decision, Filing 25, is granted;

2. Petitioner's Motion for an Order Reversing the Commissioner's Decision, Filing 20, is denied;

3. The Commissioner's final decision is affirmed; and

4. A separate judgment will be entered.

Dated this 2nd day of December, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge